**United States District Court**
**District of Maryland**
**Northern Division**

| | | |
|---|---|---|
| Christine De Leva | ) | |
| 7417 Lake Katrine Terrace | ) | |
| Montgomery Village, MD 20879 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| Lowe's Companies, Inc. | ) | **Trial by Jury Demanded** |
| 1000 Lowe's Boulevard | ) | |
| Mooresville, North Carolina 28117, and | ) | |
| | ) | |
| Lowe's Home Centers, LLC | ) | |
| 1000 Lowe's Boulevard | ) | |
| Mooresville, NC 28117, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR INJUNCTIVE AND**
**DECLARATORY RELIEF, AND FOR DAMAGES**

**A.**    **Jurisdiction and Venue**

1.    This is an action for relief for:

a.   Violations of 42 U.S.C. § 1981 and its prohibition of discrimination based on Plaintiff's Filipina race and ethnicity;

b.   Violations of 42 U.S.C. § 1981 and its prohibition of retaliation for having complained about such discrimination;

c.   Violations of § 703(a)(1) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a)(1), and its prohibition of discrimination based on Plaintiff's female gender, entitling Plaintiff to the relief authorized by § 706(g)(1) of Title VII, 42 U.S.C. § 2000e-5(g)(1), and by 42 U.S.C. § 1981a;

1

d.   Violations of § 703(a)(1) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a)(1), and its prohibition of discrimination based on Plaintiff's Filipina race and national origin entitling Plaintiff to the relief authorized by § 706(g)(1) of Title VII, 42 U.S.C. § 2000e-5(g)(1), and by 42 U.S.C. § 1981a;

e.   Violations of § 704(a) of the Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-3(a), and its prohibition of retaliation for having complained about such discrimination, for having filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission, and for having opposed such discrimination, entitling Plaintiff to the relief authorized by § 706(g)(1) of Title VII, 42 U.S.C. § 2000e-5(g)(1), and by 42 U.S.C. § 1981a;

f.   Violations of the Equal Pay Act of 1963, 29 U.S.C. § 206(d), and its prohibition of unequal pay based on sex;

g.   Violations of the Fair Labor Standards Act of 1938, 29 U.S.C. § 215(a)(3), and its prohibition of retaliation for having complained about such discrimination, entitling Plaintiff to the relief authorized by 29 U.S.C. § 216(b).

h.   Violations of MD Code, State Government, § 20-606, because of discrimination and retaliation;

i.   Violations of MD Code, Labor and Employment, § 3-912, because of retaliation;

j.   Violations of Md. Code Ann., Lab. & Empl. § 3-304(b)(1), because of pay discrimination;

k.   False imprisonment;

l.   Abuse of process;

2

m.  Intentional infliction of emotional distress; and

n.  Negligent infliction of emotional distress.

2.      Plaintiff seeks more than $75,000 exclusive of interest and costs, as well as equitable relief.

3.      Jurisdiction is based upon 28 U.S.C. §§ 1331, 1332(a)(1), 1343(a)(4), 1367(a), and § 706(f)(3) of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(3).

4.      Defendants Lowe's Companies, Inc., and Lowe's Home Centers, LLC, employed Plaintiff in Frederick County, Maryland, and subjected her to unlawful discrimination and retaliation by firing her from her job at that location.  Plaintiff resided in Montgomery County, Maryland, during her employment.  Venue in this District is therefore proper under 28 U.S.C. §§ 1391(b)(2).  Venue in this District is also proper under § 706(f)(3) of Title VII, 42 U.S.C. § 2000e-5(f)(3).

**B.      Parties**

5.      Plaintiff is a female citizen of the United States.  She is Filipina, which is a "race" within the meaning of 42 U.S.C. § 1981.

6.      Plaintiff was a Pro Account Sales Specialist (PASA)  for the Home Depot from 2013 to February 2018.

7.      Plaintiff was #3 in the region for sales and #2 in the region for Pro Credit, while she was employed by the Home Depot.

8.      On approximately February 5, 2018, Defendant Lowe's Home Centers, LLC, hired Plaintiff to work in its Gaithersburg, Maryland store as a part-time Customer Service Associate, or "CSA."

9.      Plaintiff became a full-time employee on about August 2018, as a Pro CSA.  She requested and received a pay rate of $15 an hour.

10.     Defendants promoted Plaintiff to a full-time Pro Sales Specialist position in the Frederick store in about February 2019.

11.     Defendant Lowe's Companies, Inc., is a private corporation headquartered in Mooresville, North Carolina.  At all times in which it was engaging in the actions complained of herein, it was engaged in interstate commerce, and it and its subsidiaries and related corporations had more than 500 full-time employees in each of 20 or more calendar weeks in the current or preceding calendar year.

12.     Defendant Lowe's Companies, Inc..  with respect to its May 28, 2021 Annual Shareholders Meeting stated in part:

> Lowe's Companies, Inc. (NYSE: LOW) is a FORTUNE® 50 home improvement company serving approximately 20 million customers a week in the United States and Canada. With fiscal year 2020 sales of $89.6 billion, Lowe's and its related businesses operate or service more than 2,200 home improvement and hardware stores and employ over 300,000 associates. …

5-lowes-2021-asm-press-release-final.pdf, downloaded from

https://corporate.lowes.com/investors/news-events/events-presentations, last visited July 17, 2021.

13.     The 2021 Annual Report (Form 10-K) of Defendant Lowe's Companies, Inc., for the fiscal year ended January 29, 2021, states in relevant part:

**Selling Channels**

We are continuing to enhance our omni-channel capabilities, which allows our customers to move from channel to channel with simple and seamless transitions even within the same transaction. For example, for many projects, more than half of our customers conduct research online before making an in-store purchase. For purchases made on Lowes.com, customers may pick up their purchase in-store at the customer service desk, curbside pick-up, or touchless lockers; have their purchase delivered from a store; or have their purchase parcel shipped. In addition, flexible fulfillment options are available for in-store purchases and those made through the contact center. Regardless of the channels through which customers choose to engage with us, we strive to provide them with a seamless experience across channels and an endless aisle of products, enabled by our flexible fulfillment capabilities. Our ability to sell products in-store, online, on-site, or

through our contact centers speaks to our ability to leverage our existing infrastructure with the omni-channel capabilities we continue to introduce.

*In-Store*
Our 1,795 Lowe's-branded home improvement stores, inclusive of 1,734 in the U.S. and 61 in Canada, are generally open seven days per week and average approximately 112,000 square feet of retail selling space, plus approximately 32,000 square feet of outdoor garden center selling space.  The 179 RONA stores operate under various complementary store formats that address target customers and occasions. Our home improvement stores in the U.S. and Canada offer similar products and services, with certain variations based on localization.  We continue to develop and implement tools to make our sales associates more efficient and to integrate our order management and fulfillment processes.  Our home improvement stores have Wi-Fi capabilities that provide customers with internet access, making information available quickly to further simplify the shopping experience.

*Online*
Through our websites and mobile applications, we seek to empower consumers by providing a 24/7 shopping experience, online product information, customer ratings and reviews, online buying guides and how-to videos and other information.  These tools help consumers make more informed purchasing decisions and give them increased confidence to undertake home improvement projects. We enable customers to choose from a variety of fulfillment options, including buying online and picking up in-store, as well as delivery or parcel shipment to their homes or businesses.

 Downloaded from

https://www.sec.gov/ix?doc=/Archives/edgar/data/60667/000006066721000026/low-20210129.htm, last visited July 17, 2021.

14.     Defendant Lowe's Home Centers, LLC is a private corporation headquartered in

Mooresville, North Carolina.  At all times in which it was engaging in the actions complained of

herein, it was engaged in interstate commerce, and had more than 500 full-time employees in

each of 20 or more calendar weeks in the current or preceding calendar year.

15.     The North Carolina Department of Commerce ranked Lowe's Home Centers,

LLC, as the fifth-largest private employer in North Carolina in the first calendar quarter of 2019,

in the category of employers with 1,000 or more employees in the State.  See

Top_300_Employers_Manufacturing_and_Nonmanufacturing_2019_Corrected.pdf, downloaded

from https://www.nccommerce.com/documents/nc-manufacturing-and-nonmanufacturing-employers, last visited July 17, 2021.

16.     Upon information and belief, Lowe's Home Centers, LLC, is a wholly-owned subsidiary of Defendant Lowe's Companies, Inc.

17.     Upon information and belief, Lowe's Companies, Inc., provides Human Relations services to Lowe's Home Centers, LLC, and other subsidiaries, by developing policies for all Lowe's companies and subsidiaries to follow, and by making Lowe's Companies, Inc., Human Relations personnel available to Lowe's Home Centers, LLC, and other subsidiaries.

### C.     **Pay Discrimination and Complaints**

18.     In February 2018, Lowe's Home Centers, LLC hired Plaintiff to work at its Gaithersburg, Maryland store (Store # 223) as a part-time Pro CSA (Customer Service Associate) position at the hourly rate of about $12.50 an hour.

19.     In January 2019, former Assistant Store Manager Thelstan J. Rigby contacted Plaintiff to inform her that there was a position available in the Frederick, Maryland store where he worked (Store # 516) for a Pro Sales Specialist.  He told Plaintiff he had known about her background and wanted her on his team.

20.     Plaintiff told Mr. Rigby that she was asking for a pay rate of $20 an hour, based on her experience and performance.  Mr. Rigby said he would make note of that.

21.     Shortly after this conversation with Mr. Rigby, Plaintiff applied for the position and was interviewed over the phone about a week later.

22.     Mr. Rigby informed Plaintiff that Jeffrey Nyswaner, a CSA Pro employee at the Frederick store, had also applied for the Pro Sales Specialist position for which I was hired, but did not have as much experience in Pro as I did, so I was the better candidate for that position.

23.     Mr. Rigby called Plaintiff the following week to offer her the job but said he was instructed by his Store Manager, Gary Shanholtz, that he could only offer her a maximum pay of $16.77 an hour because the Frederick store was a lower volume store than the Gaithersburg store.  Mr. Rigby assured Plaintiff that he would raise her pay accordingly if she gave it a chance within the next year of doing well at the Frederick store.

24.     Plaintiff accepted the position and started at the end of February 2019.

25.     Eventually, Plaintiff and her co-workers discussed their respective pay rates, and Plaintiff learned she was being paid about $3.42 an hour less than Jeffrey Nyswaner and Paul Lewis, who were men in the same job, performing the same duties under the same working conditions.

26.     Plaintiff wondered why her pay was so low compared to the men's pay.  She spoke to the District Human Resources official, Ramandeep Kakar, who had an office in the back of the Frederick store.  Plaintiff spoke to him about her concerns in October or early November 2019.

27.     Upon information and belief, Mr. Kakar was an employee of the parent company, Lowe's Companies, Inc,, and not an employee of Lowe's Home Centers, LLC.

28.     Mr. Kakar told Plaintiff that her pay was determined by a pay rate advisor.  She took this to mean that it was a software application that took various factors into account and came up with either a specific pay rate, or a range of acceptable pay rates, that could be offered to her.

29.     Plaintiff asked Mr. Kakar to let her see the pay rate advisor and the information entered into it.

7

30.     Mr. Kakar told Plaintiff it was not something she could see but it is done by management to determine the rate of an employee's pay by calculating experience, etc.

31.     Plaintiff told Mr. Kakar that her co-workers had spoken about their pay at the desk.  Mr. Kakar then said that, after looking into it, he could take her travel into consideration and raise her pay by $0.35 with back pay from when she first started at the Frederick store but that that was the absolute most he could do.

32.     With Mr. Kakar's adjustment, Plaintiff's pay became approximately $17.12 an hour.

33.     Plaintiff's Store Manager, Gary Shanholtz, apologized to Plaintiff for not having taken this into consideration when she was first hired at the Frederick store.

34.     Plaintiff received the increase and back pay for that 35-cent-an-hour adjustment on her next paycheck, and was given a separate direct deposit for the back pay.

35.     The 35-cent-an-hour increase did not provide much relief for Plaintiff on an approximately $3.42 an hour pay difference for the white men.

36.     Plaintiff remained still bothered by the difference between the men's pay rates and her pay rate.

37.     In May 2019, a Pro CSA at the Frederick store, Jeffrey Nyswaner, was promoted to the same job Plaintiff had held since February 2019, Pro Sales Specialist.

38.     Mr. Nyswaner had been a Pro CSA for about a year before his promotion, and thus had lower company seniority than Plaintiff.

39.     About a week before November 11, 2019, Mr. Nyswaner displayed his pay stub on the computer screen for everyone to see, and Plaintiff was shocked to see that he was being

paid $20.19 an hour, a little more than she had unsuccessfully requested and that was denied on the ground that lower sales volume in the Frederick store made such a rate impossible.

40.     Mr. Nyswaner's pay stub showed that Lowe's had lied to Plaintiff about the reason for her lower pay rate.

41.     Mr. Nyswaner and Mr. Lewis are not Filipino, or Asian or Pacific Islanders.  They appear to be white.

42.     A pay difference of $3.07 an hour amounts to $ 6,385.60 an hour in straight-time pay for 2080 hours a year (52 weeks at 40 hours a week).

43.     A pay difference of $3.07 an hour amounts to a difference of $4.61 an hour in time-and-a-half overtime rates.

44.     Plaintiff attempted to complain to the Assistant Manager of the Frederick store, Mr. Rigby, but he had left the company.  Plaintiff then complained to Jeffrey Bowden, Pro Sales Supervisor at the Frederick store, Plaintiff's first-level supervisor but Mr. Bowden refused to get involved. He explained to Plaintiff that he is not involved in pay.

45.     On November 11, 2019, Plaintiff complained of pay discrimination based on sex and race to John Rolison, the regional Human Relations official of Lowe's Companies, Inc.

46.     Plaintiff's internal November 11, 2019 complaint used the following words: "I am reaching out to you today because I am disconcerted as to why I am not being treated equally or fairly in my current department here with Lowe's. I feel I am being discriminated against because of my sex in this male dominated position and would like some answers."

47.     Plaintiff emailed to herself a copy of the complaint she had made to Mr. Rolison. Exhibit A is a true and accurate copy of the complaint she sent to Mr. Rolison.

48.     On November 21, 2019, Mandi McWhirt, a Human Relations official of Lowe's Companies, Inc., emailed Plaintiff to acknowledge receipt of the complaint and to promise her it would be investigated.  Her acknowledgment is in Exhibit A.

49.     As a result of this complaint, Lowe's raised Plaintiff's pay rate to $20.19 an hour, retroactive to her hiring in Frederick.

50.     Plaintiff continued to outperform the white and male Pro Sales Associates who were paid more than her.

51.     Akiel Baptiste, District Pro Sales Manager of Region 1 in Western Maryland told Plaintiff that her concerns about pay would be addressed in the pay raise negotiations set to occur in March 2021.

52.     Plaintiff approached Scott Willis, her Store Manager, about her pay raise, on about March 8, 2021, asking if she could speak to him about her yearly pay raise, only to be told that the recommended pay raises had already been sent in and she should be very pleased when she saw it.

53.     When plaintiff received her first post-raise check in March 2021, she saw that she had only received the standard 3% raise that everyone in the company was supposed to receive.

54.     However, Plaintiff's pay was increased to only $ 21.80 an hour from $20.19 an hour in March 2021, and Mr. Nyswaner showed his pay stub with an increase to $22.72 an hour from $20.19 an hour in March 2021.

55.     Plaintiff remained concerned about the unequal pay she was receiving for the same position as the higher-paid but lesser-performing white and male employees.

56.     In March 2021, Plaintiff complained internally to the Store Manager of the Frederick store, Scott Willis, about her March 2021 3% pay raise.  She said that she did not feel

she was being paid as fairly as Paul Lewis and Jeff Nyswaner, her two co-workers because she was a female.

57.     Scott Willis said that the District Manager, Dustin Cornell, was responsible for rejecting the recommended increase.

58.     On information and belief, Mr Cornell is an employee of Lowe's Companies, Inc.

59.     In March 2021, the Store Manager of the Gaithersburg store, Keith Clarke, contacted Plaintiff to recruit her for his store and offered to pay her $24 an hour.  Plaintiff applied for the position. Plaintiff's internal complaints of sex and race discrimination in her pay were protected activity under 42 U.S.C. § 1981 with respect to race and ethnicity, Title VII with respect to race, sex, and national origin, and the Fair Labor Standards Act with respect to the Equal Pay Act and sex discrimination.

**D.     Retaliation**

60.     On March 29, 2021, Chris Dang, a Loss Prevention official, asked Plaintiff to come to the back rooms of the Frederick store.  Upon information and belief, Mr, Dang is an employee of Lowe's Companies, Inc.

61.     Plaintiff complied, and found in the room Mr. Dang, Assistant Store Manager, and Assistant Store Manager Jasmine Summers in the room.

62.      Lowe's placed a chair in front of the door and Ms. Summers sat in it, blocking Plaintiff from leaving the room.

63.     Plaintiff asked to use her phone to call her mother, and asked for privacy to make the call, but was told she could not leave the room.

64.     Plaintiff was imprisoned against her will in the room for approximately four hours.

65.     Lowe's conduct caused Plaintiff to be unlawfully deprived of her liberty to leave the room and either return to her job or leave the premises.

66.     During her period of false imprisonment, Lowe's insisted that Plaintiff sign a statement, using words they required, and told her this was important if she wanted to keep her job.

67.     During her period of false imprisonment, Lowe's falsely tried to make Plaintiff believe that it would not fire her if she complied with Lowe's demands and signed a statement acceptable to Lowe's.

68.     During her period of false imprisonment, Lowe's demonstrated no interest whatsoever in finding out the truth of the matter.  It was only interested in getting the words it wanted down on paper.

69.     During her period of false imprisonment, Mr. Dang initially accused Plaintiff of improperly processing a refund using her manager's credentials when the customer was not present.  Plaintiff explained to him that it was customary in the store for Pro Sales Specialists to do refunds both with, and without, the customer present and that her direct supervisor, Jeffrey Bowden, personally wrote his login credentials on a card that he gave her for the purposes of doing refunds when he was not available to do them.  She then pulled the card out of her vest containing Mr. Bowden's handwriting and gave it to Mr. Dang.

70.     Mr. Dang appeared frustrated that he could not make that charge stick, or that witnesses had seen him take possession of the document.  He complained that Plaintiff's supervisor was breaking company policy by sharing that information with her.

71.     Mr. Dang then switched to a back-up accusation and began interrogating Plaintiff regarding Pedro Andrade, a long standing Pro Service Customer who owns a landscaping and contracting business and is well known in the store.

72.     Ms. Dang accused Plaintiff of having cooperated with Pedro Andrade in stealing from the store because she did not demand to see receipts from Andrade for items he had ordered online and picked up at the online desk at the rear of the store.

73.     During her period of false imprisonment, Lowe's displayed no interest in its own policy that Pro Sales associates not ask for such receipts.

74.     Lowe's policy that Pro Sales associates not ask for such receipts stemmed from the public relations damage it had suffered from accusations of racial profiling of nonwhite customers and customers of inner-city stores.

75.     The situation was described in a June 14, 2018 story in the Washington Post, "Accused of racial profiling, Lowe's ends policy of checking customers' receipts as they leave," by Rachel Siegel.  A true and accurate copy of the text of the article, without pictures, is attached as Exhibit B.  The story with pictures can be downloaded from

https://www.washingtonpost.com/news/business/wp/2018/06/14/accused-of-racial-profiling-lowes-ends-policy-of-checking-customer-receipts-as-they-leave/, last visited July 21, 2021.

76.      In approximately June 2018, Plaintiff's Store Manager, Mr. Rigby, instructed Plaintiff not to ask Pro Sales customers for receipts for items picked up elsewhere in the store.

77.     During her period of false imprisonment, Lowe's displayed no interest in its own Store Manager's instruction that Pro Sales associates not ask for such receipts.

78.     During her period of false imprisonment, Lowe's demanded that Plaintiff state falsely that she had not followed Lowe's policies.

13

79.     During her period of false imprisonment, Lowe's demanded that Plaintiff state falsely that she had caused a "loss" to Lowe's by not following Lowe's policies.

80.     The word "loss" is ambiguous, and could refer to a mere loss of face or dignitary injury of not having a policy followed, or a monetary injury.

81.     During her period of false imprisonment, Lowe's tried to steer Plaintiff to thinking that "loss" meant a mere loss of face or dignitary injury, while intending to use the word to Frederick County law enforcement authorities as meaning a monetary injury and thus an admission of crimes involving theft of goods.

82.     Both during her period of false imprisonment and afterward, Lowe's refused to answer Plaintiff's reasonable request that it identify the made-up policy it accused her of not following.  Lowe's only response was that it was a "general" policy.

83.     Lowe's knew at the time that it was demanding that Plaintiff make a false statement, and falsely lured her to do so by making an untrue promise that she could keep her job if she did make the false statement.

84.     Lowe's knew at the time that it was trying to obtain a statement that could be used in a false criminal charge against Plaintiff, and knew at the time that it was going to turn over the statement to a Frederick County law enforcement officer to bring a false criminal charge.

85.     Deputy Testerman did not record the interview he had with Plaintiff.  When an interview is not recorded, it is easy for the interviewer to make up statements and attribute them to the person being interviewed.

86.     The interview took place for about five minutes in the same room at Lowe's.

87.     Deputy Testerman made false statements in his submission supporting the request for criminal charges.  Plaintiff never told him that she and Pedro Andrade were friends, or that

she felt he was stealing from the Frederick store, or that he was pressuring her into helping him steal from the Frederick store.

88.    Deputy Testerman's submission included allegations of Plaintiff's assertedly fraudulently processing refunds for her own benefit, without any indication anywhere in the submission that even Chris Dang had acknowledged these allegations were baseless.

89.    Deputy Testerman did not state in his submission that he had independently reviewed the asserted video evidence Lowe's claimed to possess, but simply stated that he relied on Mr. Dang's characterization of what it showed.

90.    Lowe's showed camera snapshots to Plaintiff, which simply showed her standing behind the register and Mr. Andrade standing where customers stand.  They did not show anything improper.

91.    Deputy Testerman and Lowe's were joint actors in an unlawful conspiracy against Plaintiff.

92.     Lowe's was a principal actor in this intended criminal prosecution, and intended to make itself and Mr. Dang agents of the criminal prosecution.

93.    Lowe's did not provide any *Miranda* or other warnings to Plaintiff about the uses to which its statement could be put.

94.    On information and belief, Lowe's also misled the Frederick County law enforcement authorities about its statements to Plaintiff in procuring her signature on a document it knew to be false, and intended to be false.

95.    On information and belief, Lowe's also misled the Frederick County law enforcement authorities about its policies, and did not reveal the policy of not checking receipts,

since lying to the Frederick County law enforcement authorities was essential to make its retaliatory scheme work.

96.     On April 18, 2021, Frederick County charged Plaintiff with two crimes under CR 7-104 of the Annotated Code of Maryland: (1) Theft: $100 To Under $1,500; and (2) Theft Scheme: $100 To Under $1,500.

97.     No trial has been held yet on these charges.

98.     Defendants denied Plaintiff's request for a transfer to the Gaithersburg store, and fired her.

### E.     Exhaustion

99.     Plaintiff filed an EEOC charge dated April 8, 2021, and it was received by the EEOC the same day.  A true and correct copy is attached as Exhibit C.

100.    Plaintiff filed an Amended EEOC charge dated April 15, 2021.  It was sent to the EEOC by email on April 16, 2021.  A true and correct copy is attached as Exhibit D.

101.     Plaintiff's then counsel requested a Notice of Right to Sue from the EEOC, and on April 22, 2021 the EEOC issued a Notice of Right to Sue.  A true and correct copy is attached as Exhibit E.

102.    Plaintiff is filing a Supplemental EEOC charge alleging that the criminal charges are part of  Lowe's retaliatory scheme.  When the EEOC issues a Notice of Right to Sue on that charge, Plaintiff will seek leave to amend this Complaint.

103.    Plaintiff's EEOC charges all named and will name the Maryland Commission on Civil Rights as the State or local fair employment practices agency, and thus satisfied the exhaustion requirements under Maryland law as well.

F.      **Punitive Damages**

104.    Defendants at all times engaged in acts or omissions with actual knowledge that, or reckless disregard of the question whether, their conduct violated Federal law.

105.    Defendants at all times acted with actual malice.

II.     **Count I: Racial Discrimination in Violation of 42 U.S.C. § 1981**

106.    Plaintiff incorporates ¶¶ 1-105 above as if fully set forth herein.

107.    Defendants violated 42 U.S.C. § 1981 by intentionally discriminating against Plaintiff, because of her Filipina and Asian race and ethnicity.

108.    Plaintiff seeks an injunction reinstating Plaintiff, transferring her to the Gaithersburg store, and restraining Defendants from further pay discrimination and retaliation; back pay and front pay, compensatory damages for non-economic injuries including mental anguish, and punitive damages.

III.    **Count II:  Retaliation in Violation of 42 U.S.C. § 1981**

109.    Plaintiff incorporates ¶¶ 1-105 above as if fully set forth herein.

110.    Defendants violated 42 U.S.C. § 1981 by retaliating against her for her protected complaints of pay discrimination based on race or ethnicity.

111.    Plaintiff seeks an injunction reinstating Plaintiff, transferring her to the Gaithersburg store, and restraining Defendants from further pay discrimination and retaliation; back pay and front pay, compensatory damages for non-economic injuries including mental anguish, and punitive damages.

IV.     **Count III: Discrimination in Violation of Title VII**

112.    Plaintiff incorporates ¶¶ 1-105 above as if fully set forth herein.

113.     Defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, by intentionally discriminating against Plaintiff in her compensation because of her sex, race, and national origin.

114.     Plaintiff seeks an injunction reinstating Plaintiff, transferring her to the Gaithersburg store, and restraining Defendants from further pay discrimination and retaliation; back pay and front pay, compensatory damages for non-economic injuries including mental anguish, and punitive damages.

## V.     Count IV:  Retaliation in Violation of Title VII

115.      Plaintiff incorporates ¶¶ 1-105 above as if fully set forth herein.

116.      Plaintiff incorporates ¶¶ 1-105 above as if fully set forth herein.

117.     Defendants violated § 704(a)(1) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a)(1), by retaliating against her for her protected complaints of pay discrimination based on sex, race or ethnicity.

118.     Plaintiff seeks an injunction reinstating Plaintiff, transferring her to the Gaithersburg store, and restraining Defendants from further pay discrimination and retaliation; back pay and front pay, compensatory damages for non-economic injuries including mental anguish, and punitive damages.

## VI.     Count V: Discrimination in Violation of the Equal Pay Act

119.     Plaintiff incorporates ¶¶ 1-105 above as if fully set forth herein.

120.     Defendants violated the Equal Pay Act of 1963, 29 U.S.C. § 206(d), by discriminating against Plaintiff in her compensation because of her sex.

121.     Defendant's violation was willful.

122.     Defendant's violation is subject to the three-year period of limitations.

123.     Plaintiff seeks back pay and liquidated damages.

**VII.**   **Count VI:  Retaliation in Violation of the Fair Labor Standards Act**

124.    Plaintiff incorporates ¶¶ 1-105 above as if fully set forth herein.

125.    Defendants violated the Fair Labor Standards Act of 1938, 29 U.S.C. § 215(a)(3), and its prohibition of retaliation for having complained about such discrimination, entitling Plaintiff to the relief authorized by 29 U.S.C. § 216(b).

126.    Plaintiff seeks an injunction reinstating Plaintiff, transferring her to the Gaithersburg store, and restraining Defendants from further pay discrimination and retaliation; back pay and front pay, compensatory damages for non-economic injuries including mental anguish, and punitive damages.

**VIII.**   **Count VII:  Discrimination and Retaliation in Violation of MD Code, State Government, § 20-606**

127.    Plaintiff incorporates ¶¶ 1-105 above as if fully set forth herein.

128.    Defendants violated Md. Code Ann., Lab. & Empl. § 20-606 by discriminating against Plaintiff in her compensation, and by retaliating against her for opposing those practices, making internal complaints about those practices, and filing charges of discrimination with the EEOC and with the Maryland Commission on Civil Rights.

129.    Plaintiff seeks an injunction reinstating Plaintiff, transferring her to the Gaithersburg store, and restraining Defendants from further pay discrimination and retaliation; back pay and front pay, compensatory damages for non-economic injuries including mental anguish, and punitive damages.

**IX.**   **Count VIII:  Retaliation in Violation of MD Code, Labor and Employment, § 3-912**

130.    Plaintiff incorporates ¶¶ 1-105 above as if fully set forth herein.

131.    Defendants violated Md. Code Ann., Lab. & Empl. § 3-912, by retaliating against Plaintiff for complaining of race and sex discrimimation in her compensation, and filing a charge

of discrimination with the EEOC and the Maryland Commission on Civil Rights complaining of such discrimination.

132.    Plaintiff seeks an injunction reinstating Plaintiff, transferring her to the Gaithersburg store, and restraining Defendants from further pay discrimination and retaliation; back pay and front pay, compensatory damages for non-economic injuries including mental anguish, and punitive damages.

## X.    <u>Count IX:  Discrimination in Pay, in Violation of Md. Code Ann., Lab. & Empl. § 3-304(b)(1)</u>

133.     Plaintiff incorporates ¶¶ 1-105 above as if fully set forth herein.

134.    Defendants violated Md. Code Ann., Lab. & Empl. § 3-304(b)(1), by paying Plaintiff less than Mr. Nyswaner and Mr. Lewis for performing the same work under the same working conditions without meeting any of the statutory exceptions.

135.    Plaintiff seeks an injunction reinstating Plaintiff, transferring her to the Gaithersburg store, and restraining Defendants from further pay discrimination and retaliation; back pay and front pay, compensatory damages for non-economic injuries including mental anguish, and punitive damages.

## XI.    <u>Count X:  False Imprisonment</u>

136.     Plaintiff incorporates ¶¶ 1-105 above as if fully set forth herein.

137.    As a result of Defendants' actions, Plaintiff suffered damage by being unlawfully held against her will for approximately four hours.

138.    Plaintiff seeks an injunction reinstating Plaintiff, transferring her to the Gaithersburg store, and restraining Defendants from further false imprisonment, compensatory damages for non-economic injuries including mental anguish, and punitive damages.

### XII.    Count XI:  Abuse of Process

139.     Plaintiff incorporates ¶¶ 1-105 above as if fully set forth herein.

140.     As a result of Defendants' actions, Plaintiff suffered damage by being unlawfully held against her will for approximately four hours.

141.     Plaintiff seeks an injunction reinstating Plaintiff, transferring her to the Gaithersburg store, and restraining Defendants from further abuse of process, compensatory damages for non-economic injuries including mental anguish, and punitive damages.

### XIII.   Count XII:  Intentional Infliction of Emotional Distress

142.     Plaintiff incorporates ¶¶ 1-105 above as if fully set forth herein.

143.     As a result of Defendants' actions, Plaintiff suffered damage from Defendants' intentional infliction of emotional distress on her.

144.     Plaintiff seeks an injunction reinstating Plaintiff, transferring her to the Gaithersburg store, and restraining Defendants from further intentional infliction of emotional distress, compensatory damages for non-economic injuries including mental anguish, and punitive damages.

### XIV.   Count XIII:  Negligent Infliction of Emotional Distress

145.     Plaintiff incorporates ¶¶ 1-105 above as if fully set forth herein.

146.     As a result of Defendants' actions, Plaintiff suffered damage from Defendants' negligent infliction of emotional distress on her.

147.     Plaintiff seeks an injunction reinstating Plaintiff, transferring her to the Gaithersburg store, and restraining Defendants from further negligent infliction of emotional distress, compensatory damages for non-economic injuries including mental anguish, and punitive damages.

## XV.    <u>Jury Trial</u>

148.    Plaintiff respectfully demands trial by jury.

## XVI.    <u>Prayer</u>

WHEREFORE, Plaintiff respectfully prays that the Court award her:

1.    Back pay in the amount of all her lost wages and benefits;

2.    Front pay for wages and benefits;

3.    Compensatory damages in an amount to be determined at trial for the mental anguish any ordinary employee would feel when discriminated against on the basis of race, national origin, and/or religion, or when retaliated against for complaining of unlawful discrimination, retaliation, and harassment in an amount to be determined at trial;

4.    Punitive damages in an amount to be determined at trial;

5.    Prejudgment interest at 10% per year, the rate set for postjudgment interest by Maryland Code, Courts and Judicial Proceedings, § 11-107, and in the alternative at the rate the Court sets in its discretion;

6.    Postjudgment interest at the rate set by law; and

7.    Reasonable attorney's fees, costs and expenses.

Respectfully submitted,

/s/ Richard T. Seymour
Richard T. Seymour (Bar No. 29006)
Law Office of Richard T. Seymour, P.L.L.C.
1717 K Street N.W. Suite 1110
Washington, DC 20006-5345
  Voice: 202-785-2145 – Telephone
         (202) 549-1454 – Cell
         (800) 805-1065 – Facsimile
         rick@rickseymourlaw.net

Attorney for Plaintiff

Dated:   July 21, 2021